## STATE *v.* BEAN & *a.*

If no supervisors of the check-list are chosen at a biennial election, they may be elected at a town-meeting specially called for the purpose.

INFORMATION, in the nature of a *quo warranto* filed by the attorney-general, at the relation of Edmund C. Cole and two others.

*The Attorney-General*, for the state.   The office of supervisors of the check-list was created by act of the legislature, approved August 16, 1878.   Laws, 1878; G. L., *c.* 30, *s.* 1.   The object and

purpose of this enactment, as is well known, was to do something towards lifting the regulation of the check-list out of the extreme partisan ruts into which it had fallen, by the creation of a tribunal which it was supposed would be fairer and more impartial than a partisan board of selectmen. To that end it was not placed in the category of ordinary "town officers," which are required to be chosen "annually," but was made, as we say, a state office, charged with the performance of judicial functions, and the members of its board were required to be chosen biennially.

The language of the statute is, "A board of supervisors, consisting of three legal voters in each town, shall be elected at the biennial election, to be holden in November next, by major vote, and at each biennial election thereafter," &c. Act of 1878, *s.* 5; G. L., *c.* 30, *s.* 1. The law is imperative that they shall be chosen at the biennial election, and no other mode is provided, nor is any other mode for filling any vacancy provided, except by the appointment of the "remaining supervisors," as pointed out in *s.* 3, *c.* 30, Gen. Laws.

The defendants claim to hold their offices under color of an election at a special meeting called under the provisions of *c.* 42, *s.* 1, of the Gen. Laws. But this section has no reference whatever to the election of supervisors. They are in no sense town officers, such as are treated of in this chapter. The whole scope of the chapter shows that it applies only to officers who are elected annually. This section provides that in the case of vacancies occurring in any of the ways mentioned in this section, such vacancies may be filled at a special meeting called for the purpose, or at the adjournment of the annual meeting, showing conclusively that it is annual officers and annual meetings of which it treats. It would be absurd to suppose that the legislature could have intended this to apply to supervisors, in direct antagonism to the provision which required these officers to be elected at the biennial meetings.

To allow supervisors to be chosen at special meetings would be in violation of the whole spirit and intention of the act providing for their election. One great reason for having these officers chosen at the biennial meetings evidently was, that they might be chosen at a time when the fullest expression of the votes of the town could be obtained. The March, or annual, meetings are of secondary importance as compared with the biennial meetings, when representatives to the general court, members of congress, senators, councillors, and the governor are to be chosen, and the attendance of voters is much larger than at the annual meetings or at special meetings. It is notorious that there is usually a meagre attendance at special town-meetings called for ordinary purposes. It is, therefore, not at the annual meetings, nor at special meetings, that the important offices of supervisors are to be filled. To hold that these officers could be chosen at any special meeting would be in violation of the object and spirit of the super-

visor act, because it would open the door to the grossest frauds,
and defeat the very purpose for which the act was passed.

If, by any latitude of construction or interpretation, it can be
held that supervisors come within the definition of the term " town
officers " as used in the statute, then this would follow: These
relators, who were duly elected at the biennial election in Novem-
ber, 1883, would " continue in office until others are chosen and
sworn in their stead." G. L., c. 40, s. 14. But it would not fol-
low from this that they would only hold over until others could
be chosen in their stead at some special meeting; but the law hav-
ing pointed out how this particular kind of town officers shall be
chosen, to wit, at the biennial meeting, they will hold their offices
until the next biennial meeting, when it will be competent to
choose others in their stead. It cannot be said that, under s. 14,
c. 40, these supervisors, as town officers, would necessarily hold
" only until the next annual meeting," for this would be one of the
exceptions, saved by this section, " where the law otherwise
directs."

*John H. Albin* and *Davis & Paige*, for the defendants.

CARPENTER, J. The relators were elected supervisors of the
check-list for the town of Warner at the November election, 1882.
In the warrant for the biennial meeting of November, 1884, the
business of choosing supervisors was not mentioned, and no super-
visors were elected at that meeting. At a special meeting called
for the purpose, and held on the 6th of December, 1884, at and
before which the relators performed the duties of supervisors, the
defendants were chosen supervisors, if they lawfully could be; and
the question is, whether those officers can be elected at a special
meeting, when none have been chosen at the biennial meeting.

Whether particular officers are state, county, or town officers, is
determined by the nature and extent of their jurisdiction, and by
the functions which they have to perform, rather than by the time
and manner of their election or appointment. If justices of the
peace were elected by each town, as they are in some states, they
would not therefore be town officers; and if county commissioners
were appointed by the governor and council, they would be none
the less county officers. Supervisors of the check-list are town
officers. They must be legal voters of the town in which they are
elected, and have no authority beyond the limits of that town. It
is the duty of the board to make out and post up, at two or more
of the most public places in town, a full and complete alphabetical
list of all the legal voters in the town, fourteen days before the
meeting at which the list is required to be used; to hold sessions
for its correction, at times and places to be stated upon the posted
list; to hear all applications for putting on new names, or for strik-
ing off names already on, and all evidence offered in support of

such applications, and to correct the list accordingly; to lodge an attested copy of the check-list, as corrected, with the town-clerk, before the opening of the meeting; to be present at the opening of the meeting, to remain in attendance during its continuance, and to have with them the corrected list. It is the duty of the chairman of the board to call the meeting to order, and to preside until a moderator is chosen. G. L., cc. 30, 39, ss. 1, 5; Laws of 1879, c. 57, ss. 6, 7. No other powers are conferred or duties imposed upon them.

"All persons whose names are entered upon said list shall be deemed legal voters, and no person whose name is not upon said list shall be allowed to vote, unless his name was left off by mistake, and his right clearly known to the supervisors before the list was made out." G. L., c. 30, s. 5. " The check-list shall be used at all times in the election of moderator and supervisors, at annual and biennial elections." G. L., c. 30, s. 10; Laws of 1879, c. 57, s. 7; G. L., c. 39, s. 3; Laws of 1881, c. 69, s. 1.

One purpose of these provisions is to preserve the purity of elections, to secure to all legal voters their right to vote, and to prevent all others from voting. Whatever may be the effect of a failure to have or use a check-list at an annual or biennial election, or at any town-meeting, upon the validity of such elections, or of the action taken at such meeting, the intention of the legislature, that upon all those occasions there shall be a corrected check-list, is explicitly and unmistakably declared. Without supervisors there can be no check-list. Town officers, with exceptions not here material, continue in office until others are chosen and sworn in their stead. G. L., c. 40, s. 14. If supervisors are not town officers, their authority ceases at the end of the term for which they are elected. In the case of a failure to elect a new board, or of the disability at any time of the whole board, by reason of sickness or otherwise, there is no provision for filling the vacancy, and there can be no check-list. Such a result was not intended by the legislature, and cannot be brought about by the legal construction of indecisive language. Upon this ground, as well as by reason of the nature of the office, it must be held that supervisors are town officers.

The act of August 16, 1878 (Laws of 1878, c. 60), creating the office of supervisors of the check-list, appears in the General Laws as chapter 30, and provides that "A board of supervisors, consisting of three legal voters in each town, shall be elected at the biennial election, to be holden in November next, by major vote, and at each biennial election thereafter;" that "in case of death, resignation, or removal of a supervisor of the check-list of any town, it shall be the duty of the remaining supervisors to fill the vacancy by an appointment in writing, which shall be recorded by the town-clerk." G. L., c. 30, ss. 1, 3. The power of the remaining supervisors to fill vacancies in the board is confined to those caused by death, resignation, or removal. By removal, is intended

removal from the town, referring to the requirement that the board shall consist of "three legal voters in each town." The statutes make no provision for the removal of a supervisor from office for cause. The cases of a refusal to accept the office (unless that is equivalent to a resignation), of a supervisor's being disabled by sickness, or convicted of crime and imprisoned, or becoming insane, of the simultaneous death, resignation, or removal from town of the whole board, and of a failure to elect at a biennial election, are not provided for in the act creating the office, and in all these cases there can be no check-list unless provision is made elsewhere for filling vacancies so caused. The only other statutes relating to the subject are Gen. Laws, *c.* 42, *s.* 6, which provides that " Whenever a vacancy shall occur in any town office other than that of selectmen, the selectmen may in writing appoint some suitable person to the office; " and Gen. Laws, *c.* 42, *s.* 1, which provides that " When any person elected to any town office shall not accept the same, or shall die, resign, remove from town, or become insane in the judgment of the town, or shall be removed from office, or convicted of any crime, or when no annual meeting shall have been holden for the choice of town officers, or no choice has been made, or when there shall be a vacancy in any other way, the town may choose such officer, at any legal meeting holden for that purpose, or at the adjournment of the annual meeting."

The latter section is identical with *c.* 36, *s.* 1, of the Revised Statutes, except that the words " or convicted of any crime " were added by the amendatory act of July 4, 1868 (Laws of 1868, *c.* 1, *s.* 7). It is true, that when originally enacted it was not intended to apply to supervisors, for no such officers then existed, and that it related exclusively to officers elected at the annual meeting, because there were then no other town officers. But when, together with the act creating the office of supervisors, it was re-enacted in the body of the General Laws (Laws of 1878, *c.* 56, *s.* 1, Laws of 1879, *c.* 57, *s.* 38), no reason is perceived for supposing that the legislature did not intend it to apply to those officers, so far as its provisions are in their nature applicable to them. Newly created offices are in general subject to all the laws relating to the class of offices to which they belong. Should the legislature establish a new county office, the incumbent would be removable for official misconduct, under Gen. Laws, *c.* 24, *s.* 7; and a person elected to a new town office would be bound to take the oath of office required by Gen. Laws, *c.* 41, *s.* 1, and would be liable to the penalty prescribed by Gen. Laws, *c.* 41, *s.* 6, for neglecting to do so. The mere fact that this section, when enacted, related to annual offices only, because no others existed, is no reason for not applying it to biennial offices when they are created. An act making the selectmen's term of office two years instead of one, and changing the time of their election, would not render the existing provisions for filling vacancies inapplicable to that office.

Statutes are to be construed in view of the law existing at the time of their enactment. It must be presumed that the legislature, in adopting the supervisor act, had in mind the general law relating to vacancies in town offices, and that it was because of the existence of the general law and its supposed sufficiency for the purpose, that further provision was not made for filling vacancies in the board.

The provision of the section under consideration, relating to vacancies caused by death, resignation, or removal from town, can have no application to supervisors, because it is inconsistent with the requirement that vacancies happening from those causes shall be filled by the remaining supervisors, and the special enactment must prevail over the general one; nor can that respecting vacancies caused by removal from office, because there is no law authorizing the removal of a supervisor; nor that relating to vacancies arising from a failure to hold the annual meeting, for none can happen in the board of supervisors from that cause. But vacancies may happen by the refusal of a person elected supervisor to accept the office, by a supervisor's being convicted of crime or becoming insane, by a failure to elect, and in various other ways, to all of which the statute is in terms applicable. The fact that some of its provisions do not apply to the office of supervisors has no tendency to show that other provisions may not apply, or that they were not intended to apply. The statute is a general one, relating in terms to all town offices, but it has no application to the office of town-clerk, because the selectmen must " without delay " appoint a town-clerk whenever a vacancy occurs in that office. G. L., c. 42, s. 6. Aside from the case of supervisors, it provides for filling vacancies in some offices which cannot happen in others. A vacancy by removal from office cannot happen in the board of selectmen, because they are not removable. The statute must be read distributively, applying to each office the provisions applicable to that office.

The relators continued in office until the defendants were chosen and sworn in their stead. G. L., c. 40, s. 14. They performed all the duties of supervisors for the special meeting, and the check-list made and corrected by them was used in the election of the defendants. What effect a failure to use the check-list in the election of supervisors at a special meeting (if its use is required by Gen. Laws, c. 30, s. 10, Laws of 1879, c. 57, s. 7) might have upon the validity of the election; whether the proceedings of a meeting, in the organization of which the check-list is required to be used, but organized and held without a check-list, would be valid or invalid, and whether the selectmen can appoint under Gen. Laws, c. 42, s. 6, in case the supervisors should all simultaneously die, resign, or remove from town, or in case one or more of them should be convicted of crime or become insane, or a vacancy should otherwise happen which the remaining supervisors are not author-

ized to fill, at a time so near the annual meeting or biennial election that no special meeting to fill the vacancy could be seasonably called or held, are questions not necessary to be now determined.

At the November election in 1878 the town of Haverhill failed to elect supervisors, and as that was the first election under the law creating the office, and there was consequently no old board holding over, the town was placed in the same situation as if now the existing supervisors should all simultaneously die or resign. In that case the selectmen, acting under the advice of counsel, appointed a board of supervisors, and no question was ever moved against the validity of their action.

The defendants were lawfully elected, and are entitled to the office.

<em>Information dismissed.</em>

All concurred.